UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SARAH J. QUINTERO,                                                    No.  7-12-10591 TA

    Debtor.

## MEMORANDUM OPINION

This matter is before the Court on Debtor's Objection to Proof of Claim (Claim No. 4), filed November 20, 2012, doc. 30 (the "Claim Objection") and the Trustee's Motion to Reconsider the Debtor's Objection to the Claim of Calvary Portfolio Services, LLC as Assignee of Fireside Bank, filed May 7, 2014, doc. 39 (the "Motion to Reconsider").  At the preliminary hearing on the Claim Objection and the Motion to Reconsider, the Debtor and Chapter 7 Trustee agreed that the Court should determine the issues raised by the filings based on the current record, without further briefing, argument, or evidence.

### I.    FACTS

For the limited purpose of ruling on the Claim Objection and the Motion to Reconsider, the Court takes judicial notice of the following facts, gleaned from the docket and claims register in this case:

Debtor filed this Chapter 7 bankruptcy case on February 20, 2012.  At the time of filing, Debtor did not disclose on her bankruptcy schedules a personal injury claim she owned.

Apparently the claim was disclosed to the Trustee at the § 341[1] meeting, held March 23, 2012.  In any event, on April 25, 2012, the Debtor amended her bankruptcy schedules to disclose the claim.  Thereafter, the Trustee filed an application to employ himself as counsel, filed an

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C.

application to employ Debtor's personal injury lawyer as his counsel, and submitted a report of assets listing the claim.

On August 16, 2012, the Clerk of the Court served a Notice of Possible Dividend, doc. 24, alerting creditors that there may be a distribution in this case and that they must file proofs of claim to receive any payment. The bar date for filing claims was November 16, 2012.

The notice generated the following four claims:

| Claim Number | Claimant | Claim amount |
|---|---|---|
| 1 | American InfoSource LP | $1,405.72 |
| 2 | American InfoSource LP | $ 687.80 |
| 3 | New Mexico Taxation and Revenue ("NMTRD") | $ 16.37[2] |
| 4 | Cavalry Portfolio Services, LLC | $ 6,102.05 |
| **Total** | | **$ 8,211.94** |

With the Claim Objection, the Debtor objected to Cavalry Portfolio Services LLC's ("Cavalry's") proof of claim, filed September 4, 2012 as Claim #4 (the "Cavalry Claim"). The basis for the objection is that Debtor and Jimmy G. Quintero were divorced in 2008, and pursuant to the Marital Settlement Agreement ("MSA") executed by them, they agreed that "the debt to Fireside Bank is the obligation of Debtor's ex-husband, Mr. Jimmy G. Quintero." Claim Objection, at 1.

The certificate of service on the Claim Objection states:

> I further certify that the foregoing was mailed via first-class mail, E-mailed, or otherwise delivered to the parties listed below on November 20, 2012.
>
> Calvary Portfolio Services, LLC[3]
> Assignee of Fire Side Bank
> 500 Summit Lake Drive, Suite 400

---

[2] NMTRD originally filed a proof of claim for $11,652.30, to which the Debtor objected. NMTRD filed an amended claim for $16.37, resolving the objection.

[3] Both the Debtor and the Trustee confuse Calvary (the site immediately outside Jerusalem's walls where Jesus was crucified) with Cavalry (soldiers mounted on horseback). The creditor's name is the latter.

-2-

Valhalla, NY 10595-1340

Sarah J. Quintero, Debtor
5330 San Mateo Blvd., N.E. Apt A-4
Albuquerque, NM 87109

Cavalry did not respond to the Claim Objection. The Debtor has never submitted a default order for the Court to enter.

On May 7, 2014, the Trustee filed a Motion to Approve Compromise of Controversy with the State of New Mexico Department of Transportation, doc. 35 ("Motion to Compromise"), which sought Court approval of a settlement of the Debtor's personal injury claim for $200,000. No objections to the Motion to Compromise were filed within the deadline, and on June 17, 2014, the Court entered an order approving the Motion to Compromise.

As set forth in the Motion to Compromise and related court filings, the following expenses or other amounts will be deducted from the $200,000 settlement figure:

| Claimant | Amount deducted from $200,000 | Reason |
| --- | --- | --- |
| Personal Injury Counsel | $ 80,000 | Contingent fee |
| Personal Injury Counsel | $ 5,600 | Gross receipts tax |
| Debtor | $ 33,130 | Claim of exemption |
| Trustee | $ 600 | Approval of the compromise (estimate) |
| Total deductions | $119,330 | |
| **Net Funds available to creditors and/or Debtor** | **$ 80,670** | |

Thus, it appears the estate will have a substantial surplus of funds after paying all claims, whether or not the Calvary Claim is allowed. Any excess funds will be payable to the Debtor pursuant to § 726(a)(6). Under § 326(a), which provides that a chapter 7 trustee's compensation is limited to certain amounts distributed to parties in interest "excluding the debtor," the Trustee will not be entitled to compensation for any surplus returned to the Debtor.

-3-

Case 12-10591-t7    Doc 48    Filed 06/19/14    Entered 06/19/14 11:16:18 Page 3 of 11

On May 7, 2014, the Trustee filed the Motion to Reconsider. If Debtor's Claim Objection is overruled and the Trustee pays the claim, the Trustee's commission would be about $1,043.73.[4] This is, presumably, one reason why the Trustee filed the Motion to Reconsider despite Cavalry's failure to respond.

II.  DISCUSSION

Even though Cavalry did not respond to the Claim Objection, it is appropriate for the Court to review whether it is appropriate to enter an order disallowing the claim. The Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Rule 7055 Fed. R. Bankr. P., made applicable to contested matters by Rule 9014(c) Fed. R. Bankr. P. *See also Dennis Garberg & Assoc., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997) (stating that decisions to enter judgment by default are committed to the sound discretion of the trial court).

A.  <u>The Motion to Reconsider</u>. The Motion to Reconsider is filed pursuant to § 502(j) and Rule 3008 Fed. R. Bankr. P. These provide:

> (j) A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the

---

[4] The other claims total $2,109.86, and the trustee commission on them would be at the highest 25% rate. $2,890.14 of the Cavalry Claim would result in the 25% trustee commission rate ($722.54), while the balance of the claim, $3,211.91, would require Trustee compensation at a 10% rate ($321.19). The total is $1,043.73.

> trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

§ 502(j).

> A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

Rule 3008 Fed. R. Bankr. P..

The Advisory Committee Note on Rule 3008 states in part:

> Reconsideration of a claim that has been previously allowed or disallowed after objection is discretionary with the court. The right to seek reconsideration of an allowed claim, like the right to object to its allowance, is generally exercised by the trustee if one has qualified and is performing the duties of that office with reasonable diligence and fidelity. A request for reconsideration of a disallowance would, on the other hand, ordinarily come from the claimant.

The trigger for a motion under § 502(j) and Rule 3008 is entry of an order allowing or disallowing a claim. No such order was entered on the Cavalry Claim, therefore the Motion to Reconsider is procedurally improper. However, given the request of the parties that the Court delve into this matter based on the current record at no further expense or time commitment by the parties, the Court will treat the Motion to Reconsider as a response to the Claim Objection. As set forth below, if filed as a response the Motion to Reconsider is timely because, inter alia, no notice of objection deadline was ever given.

      B.     <u>Service of the Claim Objection</u>.

A claim objection is commenced by filing and serving a written objection. Rule 3007(a) Fed. R. Bankr. The filing of a claim objection commences a contested matter. *See* Advisory Committee Notes to Rule 3007 Fed. R. Bankr. P ("The contested matter initiated by an objection to a claim is governed by Rule 9014 . . . ."); *In re Fairchild,* 969 F.2d 866, 868 (10th Cir. 1992)

-5-

(stating that when an objection to a proof of claim is filed, it initiates a contested matter); *In re CM Holdings, Inc.,* 221 B.R. 715, 720 (D. Del. 1998) (citing and following *Fairchild*).

Rule 9014(b) Fed. R. Bankr. P. provides that service of the objection must be in accordance with Rule 7004 Fed. R. Bankr. P. Rule 7004(b)(3) allows service upon a domestic or foreign corporation:

> By mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment of by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Here, it appears that service of the Claim Objection was defective. First, it is not clear how service was accomplished because the certificate of service on the Claim Objection provides that it was served: "via first-class mail, E-mailed, *or* otherwise delivered . . . ." Claim Objection at 2 (emphasis added). Under the rule, service by first-class mail is acceptable; however, service e-mail is not, and "otherwise delivered" may or may not be acceptable.

Second, assuming that service was done by first-class mail, it does not appear that the service was made to "an officer, a managing or general agent, or any other agent." Case law makes clear that addressing mail service to such an officer or agent is required. *See In re Bolden,* 2014 WL 690514, at *2 (Bankr. M.D.N.C. 2014) (collecting cases on the issue and holding that service upon a corporation at its mailing address is clearly insufficient); *In re Houlik,* 2011 WL 4459099, at *2 (Bankr. D. Kan. 2011), reversed on other grounds, 481 B.R. 661 (10th Cir. BAP 2012) (service of process to a post office box was insufficient because it was not directed to a managing agent or officer); s*ee also In re Mersmann,* 505 F.3d 1033, 1043 (10th Cir. 2007) (stating highly specific service requirements include delivery to an officer or agent). There is a
-6-

Case 12-10591-t7    Doc 48    Filed 06/19/14    Entered 06/19/14 11:16:18 Page 6 of 11

split of authority on whether it is sufficient to address the letter as follows to comply with Bankruptcy Rule 7004(b)(3):

> XYZ Corporation
> Attention: officer, managing agent, or general agent
> 123 Elm Street
> Albuquerque, NM 87102

Some courts hold that such an address is sufficient, while others required use of a specific corporate officer's name. *See Bolden,* 2014 WL 690514, at *2 (citing cases on both sides of the issue). In this jurisdiction, use of the general language is sufficient. *See, e.g., In re Karbel,* 220 B.R. 108, 112 (10th Cir. BAP 1998).

In addition, both the name of the creditor (Cavalry Portfolio Services) and the assignor (Fireside Bank) were spelled incorrectly. Although the spelling defects likely were not legally significant, they contribute to the Court's overall impression that service of the Claim Objection was not handled with sufficient care. "In light of the comparatively lenient procedure in bankruptcy, persons effecting service must provide notice in accordance with the Rules." *Jobin v. Otis (In re M & L Bus. Mach. Co., Inc.),* 190 B.R. 111, 115 (D. Colo. 1995). *See also Montoya v. Moreno (In re Moreno),* 2012 WL 5614089, at *1 (Bankr. D.N.M. 2012) (citing *Jobin*).

    C.    <u>Lack of Notice of Objection Deadline</u>.

Debtor also failed to give Cavalry notice of a deadline to respond to the Claim Objection. Such notice is required. *See* Rule 3007(a) Fed. R. Bankr. P. (requiring service of the objection and the notice of hearing thereon). Local Bankruptcy Rule 3007-1 is quite specific:

> Unless the period is extended or shortened by order of the court, the time for filing a response to an objection to the allowance of a claim shall be 30 days from service of the objection and notice thereof. The notice of the objection shall set forth the time for filing a response and state that if no response is timely filed the court may disallow the claim as requested in the objection without further notice

> or a hearing. If a response is timely filed, the objecting party shall contact the courtroom deputy for the assigned judge to request a hearing. If no response is timely filed, the objecting party may submit to the court a proposed form of order, reciting the notice given and the date of expiration of the time to file a response, in lieu of the default procedure set forth in Fed. R. Bankr. P. 7055.

Since no notice of an objection deadline was ever given to Cavalry, nor any hearing set or noticed, the Claim Objection is not ripe for entry of an order disallowing the claim even if the Trustee had not filed a response.

    D.    <u>The Trustee's Standing</u>.

A party in interest may object to a claim filed in a bankruptcy case. § 502(a). Typically, a debtor is not a "party in interest" within the meaning of § 502(a) because the debtor will not receive a distribution from estate assets, and therefore has no "pecuniary interest" in the outcome of the claim objection. *See Kapp v. Naturelle, Inc., (In re Kapp),* 611 F.2d 703, 706-07 (8th Cir. 1979); *In re Kieffer-Mickes, Inc.,* 226 B.R. 204, 208 (8th Cir. BAP 1998). An alternative formulation is that in such cases the debtor would not be a "person aggrieved" by a claim being allowed. *See, e.g., In re Weston*, 18 F.3d 860, 863-64 (10th Cir. 1994); *In re Urban Broad. Corp.,* 401 F.3d 236 (4th Cir. 2005). An exception is made when there may be a surplus estate, because then the debtor would have a pecuniary interest in the claims objection; specifically disallowing the claim would mean more money would be delivered to the debtor. *Kapp,* 611 F.2d at 707; *McGuirl v. White,* 86 F.3d 1232, 1234 (D.C.Cir.1996); *In re El San Juan Hotel,* 809 F.2d 151, 155 n. 6 (1st Cir. 1987). In this case, the Debtor clearly has standing to object to the Cavalry Claim, because the estate likely will have a surplus after all creditors are paid.

The more interesting question is whether the Trustee has standing to respond to the Claim Objection. The Debtor did not raise this issue. Nevertheless, it should be considered because questions of standing are akin to subject matter jurisdiction and must be considered *sua sponte*.

*Carto v. Oakley (In re Oakley),* 503 B.R. 407, 421 (Bankr. E.D. Pa. 2013), citing *In re Weaver*, 632 F.2d 461, 462, n. 1 (5th Cir. 1980) and *FW/PBS, Inc., v. City of Dallas,* 493 U.S. 215, 230-31 (1990) (holding that federal courts are under an obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdiction doctrines). The Bankruptcy Code gives the Trustee the right to file proofs of claim if creditors do not do so, § 501(c), and to examine and object to proofs of claim. § 704(a)(5). A copy of all claim objections must be served on the case trustee. Rule 3007(a) Fed. R. Bankr. P. These Code and rule provisions support the well-settled role of the chapter 7 Trustee as a claims administrator[5] and could be read to allow the Trustee to defend a filed claim even when the claimant does not do so. On the other hand, neither the Code nor the Rules gives explicit standing to a trustee to step in and defend a claim upon the claimant's default.

Two cases have addressed the issue, at least indirectly. In *In re Curry,* 409 B.R. 831 (Bankr. N.D. Tex. 2009), the bankruptcy court allowed the trustee to defend against claim objections filed by the debtor in a solvent estate. The creditors had not responded to the claim objections. Without discussing the standing issue, the court permitted the trustee to proceed.

In *In re Piccoli,* 2006 WL 3371916, at *1 (Bankr. E.D. Pa. 2006), the trustee's standing was expressly challenged under similar facts. The court reviewed the standing issue and discussed the arguments on both sides, but ultimately concluded that it did not have to reach the issue because the debtor did not carry her burden of proof even without the trustee's evidence. *Id.* at *2.

---

[5] *See In re Savidge*, 57 B.R. 389, 392 (D. Del. 1986) (stating that the needs of orderly administration of the estate mandate that Trustee has duty to analyze claims in the first instance); *In re Kirkland*, 379 B.R. 341, 349-50 (10th Cir. BAP 2007) (discussing Trustee's duty to use discretion in analyzing claims) reversed on other grounds 572 F.3d 838 (10th Cir. 2009).

Here, as in *Piccoli* and *Curry,* the Trustee has a direct pecuniary interest in the outcome of the Claim Objection—he receives a commission on the claim amount if the objection fails, and he gets paid nothing if the objection is sustained. $1.043.73 in trustee commissions is riding on the outcome of the claim objection. The Court concludes that such amount, together with the statutory and rule provisions cited above, which evidence Congressional intent that case trustees be directly involved in claims administration, are sufficient to give the trustee standing to participate in the contested matter commenced by the Claim Objection.

   E. <u>The Merits of the Claim Objection</u>.

In additional to the procedural problems noted above, the Claim Objection fails on the merits. The only argument advanced in the Claim Objection is that the Cavalry Claim is not owed by the Debtor because her ex-husband agreed to pay it in the MSA. This argument is not well taken.

The Court assumes the MSA is valid and enforceable. Even so, the MSA only affects the rights and obligations between the Debtor and her ex-husband, not the rights of third parties. *See, e.g., Sunwest Bank of Albuquerque v. Roderiguez,* 770 P.2d 533, 538 (N.M. 1989) ("Although the agreement may affect the rights and liabilities of the husband and wife between themselves, it has no effect upon the rights of a pre-divorce creditor who is not a party to the agreement."); *N.M. Educators Fed. Credit Union v. Woods,* 690 P.2d 1010, 1012 (N.M. 1984) (holding that contention that defendant is not liable for a debt because ex-husband agreed to pay it in the marital settlement agreement is not a meritorious defense). Nowhere did Cavalry or its predecessor in interest sign or otherwise approve the MSA. They were not parties to the divorce proceeding. Cavalry is not bound by the debt allocation in the MSA. While the Debtor and her

-10-

ex-husband agreed *inter se* who would pay the Cavalry debt, there is no evidence that Cavalry released Debtor from liability.

## IV. CONCLUSION

The Claim Objection is procedurally and substantively deficient. The Court will overrule the objection, without prejudice to the Debtor to file, serve, and notice an amended objection within 30 days from the date hereof if she believes there are meritorious grounds for doing so. It could be, for example, that Debtor's ex-husband has by now paid the Cavalry Claim in full or in part, per the MSA. If so, that fact should be brought to the Court's attention by way of a property noticed and served amended objection. Otherwise, the Cavalry Claim will be allowed.

A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 19, 2014.

Copies to:

David N. Hernandez
1401 Central Ave. NW, Suite A
Albuquerque, NM 87104

Sarah J. Quintero
5330 San Mateo Blvd. NE, Apt A-4
Albuquerque, NM 87109

Michael J. Caplan
827 E Santa Fe Ave.
Grants, NM 87020

Calvary Portfolio Services
500 Summit Lake Dr. Suite 400
Valhalla, NY 10595